**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO JOURNEYMEN PLUMBERS UNION, LOCAL 130, U.A., | ) ) ) | |
| *Plaintiff,* | ) ) ) | Case No.: 26-cv-3991 |
| *v.* | ) ) | |
| RPM PLUMBING, LLC, | ) ) | |
| *Defendant* | ) | |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Plaintiff Chicago Journeymen Plumbers Union, Local 130, U.A. ("Local 130" or the "Union") submits this supplemental memorandum at the Court's direction (ECF No. 13).

Local 130 properly served RPM Plumbing, LLC ("RPM"), through its registered agent, Christopher Nudo. The proof of service shows Suzanne Page, a paralegal with Mr. Nudo's law firm, identified herself to the process server as the "person in charge" when the server arrived at Mr. Nudo's office. Ms. Page confirmed her identity and accepted the complaint and summons on behalf of RPM at the address Mr. Nudo has registered with the Illinois Secretary of State as his agent address for RPM. Mr. Nudo is also listed as the registered agent for over 180 different Illinois entities at this address.

Under Illinois and Northern District precedent, that is enough to have properly served RPM. Neither RPM nor Nudo has appeared, objected, or denied receipt of the Complaint and Summons. The Court should confirm service and enter the default judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Union filed this action on April 10, 2026, to confirm and enforce the September 23, 2025, Joint Arbitration Board Decision and Award and to recover for RPM's breach of Section 6.8 of the parties' Collective Bargaining Agreement ("CBA"). (ECF No. 1). The Court issued summons addressed to RPM's registered agent, Christopher Nudo, that same day. (ECF No. 5).

On April 13, 2026, special process server Kelvin A. Fadairo personally served the summons and complaint at 3601 Algonquin Road, Suite 860, Rolling Meadows, Illinois 60008. (ECF No. 9). That is the address Mr. Nudo has on file with the Illinois Secretary of State. The proof of service identifies the recipient as Susanne Page. Page "identified themselves as the person in charge with identity confirmed by subject stating their name." (ECF No. 9). She "accepted service with direct delivery." (ECF No. 9).

Local 130's attorney filed the proof of service the next day. (ECF No. 9). On April 16, 2026, the Court entered a minute order confirming that RPM's response to the Complaint was due by May 4, 2026. (ECF No. 10). RPM filed nothing nor contacted the Union to get an extension. The Union moved for entry of default and default judgment on May 13, 2026, and served copies on RPM by certified mail at the Rolling Meadows address. (ECF No. 11).

The Court's May 14 minute order observed that the Illinois Secretary of State's records list Nudo (not Page) as RPM's registered agent and directed the Union to file a supplement showing that service on Page was proper. (ECF No. 13). This memorandum supplies that showing.

A few additional facts inform the analysis. Page is a paralegal at NTegrity Law LLC, the law firm where Nudo practices. The firm's published staff page identifies "Suzanne Page" as a paralegal. (Exhibit A) The Court's order references "Susan Page," and the proof of service shows "Susanne Page." All three names point to the same person: Suzanne Page, a paralegal at the law firm of RPM's registered agent.

2

Nudo serves as registered agent for approximately 180 Illinois business entities. (Exhibit B). RPM Plumbing, LLC is one of them. (Ex. B). Acting as registered agent for client entities is part of NTegrity Law's regular law firm business. Receiving service of process is part of what the firm's staff does in the ordinary course.

Nudo has not appeared in this case, and neither Nudo nor RPM has filed an objection, moved to quash, or otherwise suggested that Page lacked authority to receive the papers on behalf of RPM.

## ARGUMENT

**I. Service on Suzanne Page at the registered agent's office was proper under Rule 4(h) and Illinois law.**

The Federal Rules of Civil Procedure authorize service on an LLC either by following state law in the state where service is made or by delivering the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1); 4(e)(1). Illinois law provides that an LLC "shall be served either upon the registered agent appointed by the limited liability company or upon the Secretary of State." 805 ILCS 180/1-50(a). The statute is not a closed list. Subsection (d) preserves "the right to serve any process . . . upon a limited liability company in any other manner now or hereafter permitted by law." 805 ILCS 180/1-50(d).

Illinois courts have long held that service on office staff at the registered agent's place of business can satisfy that standard. "Service upon an intelligent clerk of a company who acts as a receptionist and who understood the purport of the service of summons" is proper service of process. *Megan v. L.B. Foster Co.*, 1 Ill. App. 3d 1036 (Ill. App. 1971); *accord Roofers' Pension Fund v. Langlois Roofing, Inc.*, 2025 U.S. Dist. LEXIS 196328, at *5 (N.D. Ill. Oct. 3, 2025)(applying Illinois law); *Acosta v. Ashley's Quality Care, Inc.*, 2018 U.S. Dist. LEXIS 57088,

at *6 (N.D. Ill. Apr. 4, 2018)(same); *Esquivel v. Doc Able's Auto Clinic, Inc.*, 2016 U.S. Dist. LEXIS 50009, at *6–7 (N.D. Ill. Apr. 14, 2016)(same). Whether the recipient qualifies as such a person is a factual question. *Acosta*, 2018 U.S. Dist. LEXIS 57088, at *6. And where a defendant disputes the recipient's agency, the defendant carries the burden of proving that the individual was not a proper person to receive service. *Id.* at *4–5; *Esquivel*, 2016 U.S. Dist. LEXIS 50009, at *6.

The two leading Northern District applications of this rule mark the line. In *Acosta*, the registered agent's receptionist told the process server she "was authorized to accept service on behalf of the business" and took the papers. 2018 U.S. Dist. LEXIS 57088, at *7. The defendant later disputed her authority through an affidavit from its human-resources manager. *Id.* at *3–4. Judge Durkin held service proper because the receptionist represented authority, understood the import of the papers, and accepted them, and because the defendant offered no affidavit from the recipient herself disclaiming authority. *Id.* at *6–8.

*Bank Leumi USA v. Gilman Realty, LLC* reaches the same result on the same logic, holding service proper where a paralegal at the registered agent's law office accepted the summons and "stated that she was authorized to accept service" for her employer. 2019 U.S. Dist. LEXIS 238800, at *6 (C.D. Ill. Dec. 10, 2019). *Esquivel* goes the other way: service was held insufficient because the receptionist there made no representation of authority and the registered agent expressly disputed her authority by email shortly after service. 2016 U.S. Dist. LEXIS 50009, at *7–8.

Five facts, each unrebutted, place this case squarely in the *Acosta* and *Bank Leumi* line.

a. **The "Susan Page" referenced in the Court's order, the "Susanne Page" identified in the proof of service, and the "Suzanne Page" listed on NTegrity Law's website are all the same paralegal.**

4

The Court's May 14 order references "Susan Page." The proof of service identifies the recipient as "Susanne Page." (ECF No. 9). NTegrity Law's published staff page identifies "Suzanne Page" as a paralegal at the firm. (Ex. A). These are three spellings of one name. The process server confirmed Page's identity by hearing her state it in person. (ECF No. 9). The Court's "Susan" appears to be a shorthand drawn from the proof of service. Nothing in the record suggests two different people. The recipient is Suzanne Page, a paralegal at the law firm of RPM's registered agent.

**b. Suzanne Page is a paralegal at Nudo's law firm.**

Page is one of six paralegals at NTegrity Law. (Ex. A). he firm's website describes her as a "dynamic and dedicated team member" with "strong communication skills." (Ex. A). She works alongside paralegals with as much as 30 years of experience in litigation, corporate law, real estate, and estate planning. (Ex. A). She is a trained legal professional at an established firm.

**c. Christopher Nudo serves as registered agent for approximately 180 Illinois business entities, and his staff handles the resulting service of process as part of their regular work.**

A search of the Illinois Secretary of State's records returns 180 entities for which Nudo (or his firm) serves as registered agent. (Ex. B). RPM Plumbing LLC is one of them. (Ex. B). Acting as registered agent for client entities is a core function of NTegrity Law's practice. Process servers presumably come and go from the firm's Rolling Meadows office as a matter of course. The firm's staff, including Page, knows what a process server is, knows what a summons and complaint look like, and knows what to do with them. That is precisely the kind of "intelligent" office staff Illinois courts have held proper to receive service. *Megan*, 275 N.E.2d at 427.

**d. Page held herself out as authorized to receive service.**

5

The proof of service describes precisely what happened when the process server arrived. Page "identified themselves as the person in charge with identity confirmed by subject stating their name." (ECF No. 9). She "accepted service with direct delivery." (ECF No. 9). She did not refuse the papers. She did not direct the server elsewhere. She did not say she lacked authority. She did not say Nudo was unavailable. She represented herself as the person to whom service should be made and took the papers in that capacity.

That is the conduct *Acosta* and *Bank Leumi* treated as sufficient. *See Acosta*, 2018 U.S. Dist. LEXIS 57088, at *7–8; *Bank Leumi*, 2019 U.S. Dist. LEXIS 238800, at *6. And it is precisely the conduct missing in *Esquivel*, where the receptionist made no representation of authority at all. 2016 U.S. Dist. LEXIS 50009, at *7–8. *Roofers' Pension Fund* makes the equitable point that closes the loop. The recipient there told the process server he was authorized despite not being formally employed by the entity, and the defendant later argued he lacked authority. 2025 U.S. Dist. LEXIS 196328, at *4–6. Judge Gettleman rejected the argument: "OnTop should not receive a windfall from what the court views as its own misrepresentation if, in fact, Langlois Jr. was not authorized to accept service." *Id.* at *6. The same is true here. If Page in fact lacked authority, that is an internal fact about NTegrity Law's office practices. RPM and Nudo cannot benefit from a representation Page made on their behalf.

### e. Neither RPM nor Nudo has objected to the manner of service.

The strongest evidence that service worked as intended is what has not happened since. The summons was delivered on April 13, 2026. The proof of service was filed the next day. The deadline to respond passed on May 4. The Union moved for default and default judgment on May 13. The Court issued its order on May 14. Through every one of those events, Mr. Nudo has never

filed an appearance or moved to quash service. Nor has RPM, even after finally filing an appearance.

The defendant bears the burden of showing that the person served was not a proper recipient. *Acosta*, 2018 U.S. Dist. LEXIS 57088, at *4–5. RPM has put nothing in the record. There is no affidavit from Page. There is no affidavit from Nudo. There is no appearance at all. On the record before the Court, Page identified herself as the person in charge, accepted service for RPM at its registered agent's office, and the registered agent's office took possession of the papers. That is proper service under Illinois law and this District's case precedent.

**II.      In the alternative, the Court should grant a brief Rule 4(m) extension to permit re-service.**

If the Court has any residual concern about the validity of service, Plaintiff requests this Court grant it brief extension of time under Fed. R. Civ. P. 4(m) so the Union can re-serve Nudo personally or through the Secretary of State under 805 ILCS 180/1-50(a). The Union acted in good faith. It retained a special process server. It went to the address Nudo registered with the State. It obtained a sworn declaration from the server that the person in charge accepted the papers. RPM has actual notice of this case through the certified mailing of the motion for default. A short extension to cure any perceived technical defect would impose no prejudice on RPM and would resolve the issue cleanly.

**CONCLUSION**

Service was proper. Page identified herself, took the papers, and acted within the scope of what NTegrity Law's paralegals do every day on behalf of the firm's 180-entity registered agent practice. Neither RPM nor Nudo has come forward to say otherwise. The Court should confirm service and enter the default judgment. In the alternative, the Court should grant a brief Rule 4(m) extension and permit the Union to re-serve.

Respectfully submitted,

**CHICAGO JOURNEYMEN PLUMBERS
UNION, LOCAL 130, U.A.**

By: */s/ Kyle Sullivan*
    One of Its Attorneys

Gregory W. Hosé
Andrew Pigott
Kyle Sullivan (ARDC No. 6336828)
GREGORIO, STEC, KLEIN & HOSE
2 N. LaSalle Street, Suite 1650
Chicago, Illinois 60602
(312) 263-2343
ksullivan@gregoriolaw.com